United States District Court
Southern District of Texas
**ENTERED**
July 29, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHNNY LEE DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00076 |
| | § | |
| ISAAC K. KWARTENG, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO RETAIN CASE AND DISMISS CERTAIN CLAIMS**

Plaintiff Johnny Lee Davis, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated Eighth Amendment deliberate indifference claims against **Dr. Isaac Kwarteng, Physician Assistant Erick Echavarry, Dr. Lanette Linthicum, the Chairperson for the Facility Quality Management Team, and the Chairperson for the Correctional Managed Health Care Infection Control Committee** in their individual capacities for monetary relief. Accordingly, it is respectfully recommended that these Eighth Amendment claims against these individual defendants be **RETAINED.** The undersigned will order service on these five defendants.

For the reasons set forth below, the undersigned respectfully recommends further that: (1) Plaintiff's claims for money damages against the individual **Defendants** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; (2) Plaintiff's claims against **John Doe and Jane Doe** be **DISMISSED without prejudice**; and (3) Plaintiff's claims against the **Facility Quality Management Team and the Correctional Managed Health Care Infection Control Committee** be **DISMISSED with prejudice** as these are not entities capable of being sued.

## I.     JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In his original complaint, Plaintiff sued the following McConnell Unit medical officials in their individual and official capacities: (1) Dr. Isaac K. Kwarteng (Dr. Kwarteng); and (2) Physician Assistant Erick Echavarry (Echavarry). (D.E. 1, pp. 1, 3). Plaintiff seeks declaratory and monetary relief. (D.E. 1, p. 4).  Plaintiff generally claimed that Dr. Kwarteng and Echavarry violated his Eighth Amendment rights by failing provide

him adequate medical treatment in a timely manner for his Hepatitis C (Hep. C) infection. Plaintiff sought monetary relief.

Due to the insufficiency of Plaintiff's allegations set forth in his original complaint, the undersigned ordered Plaintiff to file a More Definite Statement.  (D.E. 9).  Rather than file a More Definite Statement,[1] Plaintiff submitted his First Amended Complaint in which he named the following defendants: (1) Dr. Kwarteng; (2) Echavarry; (3) Dr. Lanette Linthicum; (4) the Facility Quality Management Team (FQMT) and its Chairperson, the Director of Public Health; (5) the Correctional Managed Health Care Infection Control Committee (CMHCC) and its Chairperson; (6) John Doe; and (7) Jane Doe.  (D.E. 10, pp. 3-6).  Plaintiff seeks monetary relief.  (*Id.* at 14).

Plaintiff references a class action brought in this Court by inmates with the Hep. C infection, *Roppolo, et al. v. Linthicum, et al.*, 2:19-CV-262 (S.D. Tex. filed on Sept. 11, 2019) (*Roppolo* Class Action).  (D.E. 10, p. 6).  In *Roppolo,* a group of Texas inmates sought injunctive relief in the form of being treated with direct-acting antiviral (DAA) medication for their Hep. C infection.  The parties entered into a Settlement Agreement setting forth a treatment schedule in which the sickest inmates would receive DAA treatment first depending upon the inmate's particular AST/Platelet Ration Index (APRI) score and Metavir score.  (*Roppolo* Class Action, D.E. 132-2).  These scores were found

---

[1] Plaintiff does not explain why he ignored the Court's Order for More Definite Statement and instead filed an amended complaint.  The undersigned nevertheless notes that the detailed allegations contained in Plaintiff's First Amended Complaint are responsive to the undersigned's various questions and directives posed to Plaintiff in the Order for More Definite Statement.

to be useful in determining the degree of fibrosis or cirrhosis in the liver.  (*Id.*, D.E. 132, p. 12).

On May 11, 2021, District Judge Nelva Gonzales Ramos overruled all objections to the proposed Settlement Agreement and directed the parties to submit an agreed final order and judgment.  On July 2, 2021, District Judge Ramos entered a final order approving the class action Settlement Agreement.  (*Id.*, D.E. 314).  Notwithstanding approval of the Settlement Agreement by the Court, TDCJ inmates having Hep. C infections, such as Plaintiff, were not barred from filing a separate lawsuit seeking monetary relief related to the treatment received.  (*See id.*, D.E. 138-1, p. 2).

Plaintiff alleges the following pertinent facts in his First Amended Complaint.  In June 2018, Dr. Kwarteng diagnosed Plaintiff with chronic Hep. C.  (D.E. 10, pp. 3, 6).  Dr. Kwarteng informed Plaintiff at that time that he did not qualify for treatment because his APRI scores were not high enough under the policy in effect at that time.  (*Id.*).

In June 2018, Dr. Kwarteng also prescribe Plaintiff certain injections in order to prevent Hepatitis A (Hep. A) and Hepatitis B (Hep. B), respectively, as well as to prevent the diagnosed Hep. C condition from "killing the patient who contracts and has one or more of" Hep. A or B.  (*Id.* at 37-8).  Plaintiff states that this treatment was band-aid to push the Hep. C issue down the road and was a deliberate act by Defendants to circumvent their budgetary resources.  (*Id.* at 8).

In October 2019, Echavarry saw Plaintiff with regard to his chronic Hep. C condition. (*Id.* at 4, 8). Echavarry advised Plaintiff that his APRI score had risen to .353 but that his score was not high enough to qualify for treatment. (*Id.*). Plaintiff's Metavir score that day was F0-F1. (*Id.* at 9). Echavarry explained that Plaintiff's APRI score must reach .700 or higher under the policy in effect to qualify for treatment. (*Id.* at 4, 8). Echavarry further informed Plaintiff that the policy in the past set forth a .400 APRI score as qualifying for treatment but that it was raised to .700 because TDCJ "realized how many people needed the treatment." (*Id.*).

Plaintiff was a class action member in the *Roppolo* case. (*Id.*). In March 2021, Plaintiff received notice that a settlement had been reached in the *Roppolo* Class Action. (*Id.*). On March 24, 2021, Plaintiff was seen by Echavarry in order to obtain Plaintiff's APRI and Metavir scores. (*Id.*). Plaintiff's APRI score had risen to .635, while his Metavir score rose to F3. (*Id.*).

In September 2021, Plaintiff began to receive treatment for Hep. C condition in the form of a DAA called Epclusa. (*Id.* at 7). Plaintiff completed his DAA treatment in December 2021. (*Id.*). At the time of his treatment, Plaintiff was in an advanced stage of fibrosis and was showing "mild splenomegaly" which meant that his spleen may have to be removed. (*Id.*). After his 12-week treatment with Epclusa, Plaintiff's lab results were "HCV-RNA = undetected indicating sustained viral response." (*Id.*).

Plaintiff sues Dr. Kwarteng for allowing his Hep. C condition to go unchecked without any referral for treatment, which caused Plaintiff to suffer damage to his liver over

the course of three years.  (*Id.* at 3).  When Plaintiff's APRI score exceeded the levels set by policy, Dr. Kwarteng continued to deny referral treatment, stating that "the APRI scores do not matter [as] anyone can have a high APRI score and not need treatment."  (*Id.* at 3). Because Dr. Kwarteng did not monitor Plaintiff's Hep. C condition pursuant to policy, Plaintiff's Hep. C condition expanded to advanced fibrosis.  (*Id.*).  Plaintiff likewise holds Echavarry responsible for not properly monitoring Plaintiff's Hep. C condition according to policy and for not referring him for DAA treatment until after Plaintiff was suffering with advanced fibrosis.  (*Id.* at 4).

Plaintiff identifies Dr. Linthicum as the TDCJ's Health Services Director.  (*Id.*). Despite knowing that DAA treatment was the standard of care for treating Hep. C patients, Plaintiff holds Dr. Linthicum responsible for the Hep. C policies in place that did not provide such treatment to Plaintiff.  (*Id.*).  According to Plaintiff, rather than train her subordinates to administer DAA drugs immediately upon diagnosis, Dr. Linthicum opted to implement a monitoring policy that prolonged Plaintiff's suffering by allowing his disease to advance to advanced fibrosis.  (*Id.* at 5).

Plaintiff holds the FQMT and its chairperson responsible for implementing policy guidelines that preferred monitoring over treatment with DAA medications despite knowing that DAA treatment was the standard of care.  (*Id.*).  Plaintiff also sues the CMHCC and its chairperson for establishing treatment procedures which set forth monitoring as the course of conduct over immediate treatment with DAA for inmates like Plaintiff suffering with chronic Hep. C.  (*Id.* at 5-6).

Lastly, Plaintiff names as defendants John and Jane Doe, who Plaintiff will purportedly introduce later in this case.   (*Id.* at 6).   The undersigned respectfully recommends that these unknown defendants be dismissed without prejudice as Plaintiff alleges no facts or claims against them at this time.  Should Plaintiff identify additional party defendants with respect to his Eighth Amendment claims as this case proceeds, he may then move the court to amend his First Amended Complaint.

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the

improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

## IV.  DISCUSSION

### A.  Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues the individual Defendants in their official capacities for money damages, such claim is barred by the Eleventh Amendment.  Thus, it is respectfully recommended that Plaintiff's claim for money damages against the individual Defendants in their official capacities be dismissed.

### B.  Capacity to be Sued

To have the requisite capacity to sue or be sued, a governmental department or political subdivision must "enjoy a separate legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (citation and internal quotation marks omitted). "[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.*

In his First Amended Complaint, Plaintiff sues the CMHCC as well the committee's chairman.  The CMHCC is a committee created by the Texas Legislature for the limited purpose of developing a "managed health care plan" for inmates incarcerated in the state prison system, which is operated by TDCJ.  *See* Tex. Gov't Code § 501.146.  While the CMHCC assists TDCJ in developing health care policies, "the statutory scheme that authorizes CMHCC to assist TDCJ with developing state-wide policies related to inmate health care does not include any language granting CMHCC the power to sue and be sued." *Sain v. Collier*, No. H-18-4412, 2019 WL 4144321, at *10 (S.D. Tex. Aug. 30, 2019) (citing Tex. Gov't Code §§ 501.131-501.156).  Thus, in *Sain*, the district court determined that the CCHCC lacked the requisite legal capacity to be sued.  *Id.* at *10.

Accordingly, the undersigned respectfully recommends that the CMHCC be dismissed with prejudice as it is not an entity capable of being sued.  While CMHCC is not a proper defendant, it does not appear that Plaintiff is foreclosed from suing the CMHCC's chairperson individually in connection with his or her alleged role in developing and implementing treatment procedures to establish monitoring as the course of conduct over

immediate treatment with DAA for inmates with chronic Hep. C.  The undersigned, therefore, will discuss below whether Plaintiff has sufficiently stated deliberate indifference claim against the CMHCC chairperson in his or her individual capacity.

Plaintiff also names as defendants the FQMT and its Chairperson.  Plaintiff's allegations suggest that the FQMT is another governmental department or political subdivision of the TDCJ.  The undersigned has found no authority to indicate that the FQMT, assuming it is an actual department or subdivision of the TDCJ, enjoys a separate legal existence such that it can be subject to suit.  *See Darby*, 939 F.2d at 313.

Accordingly, the undersigned respectfully recommends that the FQMT be dismissed with prejudice as it is not an entity capable of being sued.  While FQMT is not a proper defendant, the undersigned will not foreclose Plaintiff from suing the FQMT's Chairperson in connection with his or her role in implementing policy guidelines that choose monitoring over immediate treatment with DAA medications.  The undersigned, therefore, will discuss below whether Plaintiff has sufficiently stated a deliberate indifference claim against the FQMT chairperson in his or her individual capacity.

### C.  Analysis of Plaintiff's Eighth Amendment Claims

The undersigned now turns to consider whether Plaintiff has stated deliberate indifference claims against Defendants.  Prisoners are protected from cruel and unusual punishment by the Eighth Amendment.   While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that

inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825, 847 (1994). The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Delay in treatment may be actionable under § 1983 only if there has been

12 / 18

deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). The decision whether to provide additional treatment is a matter of medical judgment. *Domino*, 239 F.3d at 756. The failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to support a claim of deliberate indifference. *Id.*

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation;

or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

Several unpublished and nonprecedential cases have upheld the TDCJ's Hep. C treatment policies and protocols in connection with disagreements over whether to monitor an inmate's Hep. C condition rather than immediately provide DAA treatment. *See Grumbles v. Livingston*, 706 F. App'x 818, 819 (5th Cir. 2017); *Hendrix v. Aschberger*, 689 F. App'x 250, 250 (5th Cir. 2017); *McCarty v. Zapata Cty.*, 243 F. App'x 792, 794 (5th Cir. 2007); *Hood v. Collier*, No. 3:18-0295, 2019 WL 3412440, at *7 (S.D. Tex. Jul. 29, 2019); *Vasquez v. Morgan*, No. H-18-3978, 2019 WL 2393428, at *3 (S.D. Tex. Jun. 6, 2019); *Crow v. Mbugua*, No. H-17-1923, 2018 WL 5847410, at *4 (S.D. Tex. Nov. 8, 2018); *Burling v. Jones*, No. H-16-0868, 2017 WL 384364, at *7 (S.D. Tex. Jan. 24, 2017). The courts recognized in these cases that a prisoner's claims as to his medical care received for his Hep. C condition amounted to nothing more than a disagreement with the treatment provided, which is insufficient to state an Eighth Amendment violation. *See, e.g.*, *Hood*, 2019 WL 3412440, at *7.

Many of the cases cited above were decided at the summary judgment stage and not at the pleading stage. *Grumbles*, 706 F. App'x at 820; *McCarty*, 243 F. App'x at 794; and *Hood*, 2019 WL 3412440, at *7. The Fifth Circuit in *Hendrix*, however, affirmed the dismissal of Hendrix's deliberate indifference claim at the screening stage as frivolous. *Hendrix*, 689 F.App'x at 250. Likewise, in *Vasquez*, *Crow*, and *Burling*, the district courts

dismissed the prisoner's Hep. C claims at the screening stage. *Vasquez*, 2019 WL 2393428, at *3; *Crow*, 2018 WL 584 7410, at *4; *Burling*, 2017 WL 384364, at *7.

This Court has considered a prisoner's Eighth Amendment claims that medical officials refused to treat his Hep. C condition with DAAs and that such refusal led to physical suffering as well as worsening liver disease. *Mendez v. Chang*, No. 2:18-CV-396, 2020 WL 564271, at *3 (S.D. Tex. Feb. 4, 2020). In distinguishing Mendez's case from unpublished and nonprecedential cases decided at the summary judgment stage, the Honorable Hilda G. Tagle noted that Mendez had not yet had an opportunity to produce evidence in support of his deliberate indifference claim. *Id.* at *2. Judge Tagle, therefore, declined to dismiss Plaintiff's deliberate indifference claim for failure to state a claim. *Id.* at 2-3.

Likewise, in *Moreland v. McCoy*, No. 2:18-CV-269, 2019 WL 3937143 (S.D. Tex. Feb. 8, 2019), *adopted* 2019 WL 3936042 (S.D. Tex. Aug. 19, 2019) , this Court conducted a frivolity screening and determined that Moreland had alleged sufficient facts to state deliberate indifference claims with regard to the medical officials' failure to provide him with timely DAA treatment for his Hep. C condition. *Id.* at *4. Moreland's allegations were based on medical officials' actions in denying and delaying treatment "until after he had developed complications such as fibrosis and cirrhosis." *Id.*

Here, Plaintiff alleges that Dr. Kwarteng and Echavarry provided inadequate care for Plaintiff's Hep. C condition after he was diagnosed in June 2018 by not monitoring his Hep. C condition in a proper fashion and allowing his Hep. C condition to go unchecked

without any referral for treatment.  As a result of their alleged deficient care, Plaintiff suffered damage to his liver in the form of advanced fibrosis.  Plaintiff further alleges that: (1) Dr. Linthicum implemented a policy of monitoring Plaintiff's Hep. C progression rather than implement a policy following the standard of care in which DAA drugs were administered immediately upon diagnosis; (2) the FQMT's Chairperson implemented policy guidelines that choose monitoring over treatment with DAA medications despite knowing that DAA treatment is the standard of care; and (3) the CMHCC's Chairperson established the treatment procedures setting forth monitoring as the course of conduct over immediate treatment with DAA for inmates like Plaintiff suffering with chronic Hep. C.

Liberally construed, Plaintiff's allegations indicate that the actions of these defendants may have unconstitutionally delayed effective DAA treatment until after he had developed serious medical complications.  These allegations reflect that they either: (1) personally participated in Plaintiff's care by delaying Hep. C treatment with DAAs; or (2) implemented policies and procedures which delayed Plaintiff from receiving DAA treatment for his Hep. C condition until after the efficacy of such treatment had decreased and he had developed serious liver complications.  Accepting Plaintiff's allegations as true, Plaintiff has alleged sufficient facts to state Eighth Amendment deliberate indifference claims against Dr. Kwarteng, Echavarry, Dr. Linthicum, the FQMT's Chairperson, and the CMHCC's Chairperson.

## V.     RECOMMENDATION

For the reasons stated above and for purposes of §§ 1915A and 1915(e)(2), the undersigned respectfully recommends that the Court **RETAIN** Plaintiff's Eighth Amendment deliberate indifference claims against **Dr. Kwarteng, Echavarry, Dr. Linthicum, the FQMT's Chairperson, and CMHCC's Chairperson** in their individual capacities for monetary relief.  The undersigned will order service as to these defendants by separate order.

For the reasons set forth below, the undersigned respectfully recommends further that: (1) Plaintiff's claims for money damages against the individual **Defendants** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; (2) Plaintiff's claims against **John Doe and Jane Doe** be **DISMISSED without prejudice**; and (3) Plaintiff's claims against the **FQMT and the CMHCC** be **DISMISSED with prejudice** as these are entities not capable of being sued.

Respectfully submitted on July 29, 2022.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).