IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHNNY LEE DAVIS,<br>  Plaintiff, | § § § | |
| V. | § § | CIVIL ACTION NO. 2:22-cv-00076 |
| ISAAC K. KWARTENG, et al.<br>  Defendants. | § § § | |

### DEFENDANTS' MOTION TO DISMISS PURSUANT TO
### FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendants Dr. Isaac Kwarteng ("Dr. Kwarteng"), Physician Assistant Erick Echavarry ("PA Echavarry"), Dr. Lanette Linthicum ("Dr. Linthicum"), Tanya Lawson ("Lawson"),[1] Kirk Abbott, ("Abbott") and Chris Ann Black-Edwards ("Black-Edwards")[2] (collectively, "Defendants"), through the Office of the Attorney General of Texas, respectfully submit this motion to dismiss Plaintiff Johnny Lee Davis ("Davis")'s First Amended Complaint ("FAC") (ECF No. 10) pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Davis failed to exhaust properly administrative remedies prior to following suit.

### STATEMENT OF THE CASE

Plaintiff Davis is an inmate confined to the custody of the Texas Department of Criminal Justice ("TDCJ") at the McConnell Unit in Beeville, Texas. Proceeding *pro se* and *in forma pauperis*, Davis filed suit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No.

---

[1] The Court retained Davis's individual-capacity claims against the chairperson of the "Facility Quality Management Team." *See* ECF Nos. 12, 15. No such entity exists. However, each prison unit has a "Quality Improvement/Quality Management Committee" which roughly serves the function Davis outlines in his complaint. At all times relevant to this action, Lawson was chair of that committee at the McConnell Unit.

[2] The Court retained Davis's individual-capacity claims against the chairperson for the "Correctional Managed Health Care Infection Control Committee." *See* ECF Nos. 12, 15. At all times relevant to this action, Abbott and Black-Edwards were co-chairs of that committee.

1

1 ("Compl"). In sum, Davis alleged that he did not receive proper medical treatment for his Hepatitis C from June 2018, when he was first diagnosed with the disease, until September 2021, when he was provided with direct-acting antiviral ("DAA") medication. *Id.*

Due to the insufficiency of Davis's allegations set forth in his original complaint, the Court ordered him to file a More Definite Statement. ECF No. 9. Rather than doing so, however, Davis submitted his First Amended Complaint, which added a number of new defendants but continued to complain of allegedly delayed treatment for his Hepatitis C. ECF No. 10 ("FAC"). The Court then screened Davis's amended pleading pursuant to the Prison Litigation Reform Act ("PLRA") and determined that only some of Davis's claims should be permitted to proceed. ECF Nos. 12, 15. Specifically, the Court allowed to move forward Davis's Eighth Amendment claims for monetary damages against Defendants in their individual capacities only. *Id.* Davis seeks damages against Dr. Kwarteng and PA Echavarry for their alleged roles in delaying his treatment, and against the remaining Defendants for their alleged roles in enacting policy which allegedly allowed that delay. *See* FAC.

While the Court's screening assessed the sufficiency of Davis's allegations, it did not address whether Davis had properly exhausted administrative remedies as required by the PLRA. By this motion, Defendants assert that Davis has not met that requirement, warranting dismissal at this stage.

### STANDARD OF DISMISSAL

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal when an opposing party fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. at 556). Thus, while the

complaint need not contain "detailed factual allegations," it must go beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. At no time do courts accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (*quoting Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

**I.      Davis Did Not Properly Exhaust Administrative Remedies Prior to Filing Suit.**

The PLRA imposes a strict exhaustion requirement: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. at 218. Congress enacted the PLRA in an effort to address the large number of prisoner complaints filed in federal court. Prisoner complaints, which "account for an outsized share of filings in federal district courts," are predominately frivolous and without merit. *Jones*, 549 U.S. at 203. The PLRA "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Id.* at 204. The exhaustion requirement applies to all suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners are required to exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). In order to properly exhaust administrative remedies, the prisoner must not only pursue all available avenues of relief, but must also comply with all administrative deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95 (2006).

The Fifth Circuit requires an inmate's strict adherence to TDCJ grievance procedures before a claim may be deemed properly exhausted. *See Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly."). The Supreme Court has expressly found the PLRA leaves "no question that exhaustion is mandatory . . . and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 199–200. Although the PLRA does not specify what constitutes proper exhaustion, the Supreme Court has held that this determination is made by asking whether the prisoner has complied with the prison grievance process, which will vary from state to state. *Id.* at 218.

In Texas, TDCJ provides a two-step procedure for processing grievances and provides inmates with detailed instructions on how to file grievances. *See Johnson v. Johnson*, 385 F.3d 503, 515-16 (5th Cir. 2004). An inmate must complete both a Step One and Step Two grievance in order to properly exhaust his administrative remedies. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). To initiate the grievance process, an inmate must first file a Step One grievance within fifteen days of the complained-of incident, and the grievance is addressed by the prison administration at the inmate's unit of assignment. *Johnson*, 385 F.3d at 515. If an inmate is dissatisfied with the response to a Step One grievance or if he receives an adverse decision thereto, he may file a Step Two grievance within ten days. *Id.*. The investigations into Step Two grievances are handled at the state level. *Id.* An inmate must pursue a grievance through both steps for it to be considered exhausted. *Id.*

Here, Davis attached to his original complaint the set of Step One and Step Two grievances (Grievance No. 2019090117) which he contends satisfy his exhaustion requirements. *See* Compl. at ¶ 45; Compl. Ex. F (pages 30-33).[3] The Court may therefore assess the sufficiency of that set of

---

[3] Although Davis's amended complaint does not re-attach his grievances, he specifically refers to them as an exhibit to his original complaint, thereby incorporating them in to his live pleading. *See* FAC at ¶ 45. *See Tellabs,*

4

grievances at the Rule 12(b) stage. *See Rebaldo v. Jenkins*, 660 F. Supp. 2d 755, 761 (E.D. La. 2009) (exhaustion issue is properly assessed on Rule 12(b)(6) motion where plaintiff attached grievances to his complaint) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

Based solely on the content of Grievance No. 2019090117, the Court should find that that set of grievances is insufficient to satisfy the PLRA for two reasons. First, it impermissibly raises several issues and seeks redress only for an entirely separate issue (access to dental prosthetics). Second, to the extent it does briefly mention Hepatitis C treatment, its cursory allegation on that topic does not meet the specificity threshold to give TDCJ proper notice of the complaints giving rise to this lawsuit.

    a. **Grievance No. 2019090117 violates TDCJ's "one issue per grievance rule" and seeks redress exclusively for an unrelated issue of dental prosthetics.**

TDCJ policy also requires that "only one issue per grievance be presented." *Randle v. Woods*, 299 F. Appx. 466, 467 (5th Cir. 2008) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)); *Richbourg v. Horton*, No. 08–10043, 2008 WL 5068680, at *1 (5th Cir., Dec. 2, 2008) ("Generally, pursuant to prison regulations, only one grievance can be filed every seven days and only one issue can be raised in each grievance."); *see also* TDCJ Offender Orientation Handbook, p. 74 (explaining rule that inmates may present only one issue per grievance).[4] Where an inmate violates this rule and submits grievances complaining of multiple issues, courts will dismiss the action for failure to exhaust unless the TDCJ officials investigating the grievance specifically responded to the issue giving rise to the case. *See, e.g., Davis v. Evans*, 5:15-cv-138, 2016 WL 11200187, at *3-4 (E.D. Tex. Dec. 9, 2016), *rec. adopted*, 2017 WL 892117 (E.D. Tex. Mar. 7, 2017).

---

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in ruling on a Rule 12(b)(6) motion, courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

[4] Defendants ask that the Court take judicial notice of this handbook, which is publicly available at www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf (last visited September 8, 2022). *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

In *Evans*, the plaintiff inmate sued his prison physician, Dr. Stanley, for allegedly refusing to evaluate or treat his chest pain. *Id.* at *1. The inmate's Step One and Step Two grievances, which he attached to his pleading, raised concerns about Dr. Stanley's actions but also raised separate concerns about how a correctional officer, Lt. Lafayette, had mismanaged the situation. *Id.* at *2. Following its "one issue per grievance" policy, TDCJ's grievance responses addressed *only* the inmate's complaint about Lt. Lafayette and disregarded his complaint against Dr. Stanley. *Id.* On Dr. Stanley's Rule 12(b)(6) motion to dismiss, the court held that the inmate's grievances—while mentioning Dr. Stanley's alleged refusal to treat—were insufficient to satisfy the PLRA's exhaustion requirement with respect to that claim because they impermissibly raised another issue, and that other issue was the sole issue addressed by TDCJ in its responses:

> A review of Plaintiff's grievances shows he did not properly exhaust his claim against Dr. Stanley regarding his chest pains because he presented multiple issues in his Step One grievance and thus did not follow proper procedures. The TDCJ grievance department interpreted Plaintiff's grievance as complaining about Lt. Lafayette and answered that issue. Thus, Plaintiff did not present his grievance about Dr. Stanley to the TDCJ administration in a manner which complied with prison rules regarding grievances. Because Plaintiff did not pursue his grievance against Dr. Stanley in a procedurally proper manner, as required by *Woodford*, he failed to exhaust his administrative remedies and his claim regarding the chest pain may be dismissed on this basis.

*Id.* at 4. Because this case involves a virtually identical scenario, the Court should similarly conclude that Davis's claims are barred by the PLRA.

Like the inmate in *Evans*, Davis attached to his complaint the set of Step One and Step Two grievances which he contends satisfy the PLRA's exhaustion requirement. *See* Compl. at ¶ 45, Compl. Ex. F at pages 30-33. And, like the inmate in *Evans*, Davis violated TDCJ's policy by raising multiple unrelated concerns in the same grievance. *Id.*

Davis's Step One grievance complains in great detail about access his to dental care and TDCJ's dental prosthetics policy:

6

> I waited 18 months to finally see a dentist at TDCJ. I finally seen a dentist at the McConnell Unit on July 2, 2018. I have broken, decayed teeth in the top of my mouth. The dentist agreed to pull the remaining one or two teeth to allow for a denture plate to be made. After signing the release to pull the teeth the dentist got me in the chair and explained he changed his mind. He wanted to leave the remaining two teeth due to the policy at the time not allowing dentures. I wrote to the Practice Manager in August 20[1]8. She forwarded my I-60 back to dental. In December 2018 TDCJ Medical Director Dr. Lanette Linthicum and Senator John Whitmire announced a new policy implemented and formally adopted in December 2018 that provided full dental care including dentures. I have seen the dentist here at McConnell Unit three times. He pulled two rear teeth. I am still left with broken, decayed teeth that when removed will leave me with nothing to chew with. The dentist says there is still no dental policy in place that will allow him to replace the broken teeth with a denture. I wrote another I-60 to Tanya Lawson/Senior Practice Manager: She advised there was no policy in place yet for dentures and referred me to dental. I went back to dental [2-28-19] and the dentist told me there was no funds for any dentures. The new policy will be reported on in another month but it would be years before the general population will be allowed dentures. And then you will still have to be under weight to show a need for dentures. And have morbid disease. This is unexceptable [sic] dental care. TDCJ is in the practice of telling you anything to deter you from asking for any type of dental care. If there is a policy in place it should cover all Texas inmates. I have a desperate need for dentures. I have broken, decaying, painful teeth that must be taken out. This will leave me with nothing to chew with so naturally I am going to lose weight at a fast pace. There are several men here at the McConnell Unit alone that have broken and/or missing teeth. This is unexceptable [sic] dental care. Prisoners of TDCJ should be entitled to have sufficient oral care and medical care just like everyone else. You can't say some of us are entitled to dental care and some of us are not.

Compl. Ex. F at pages 32-33. After this lengthy type-written narrative, Davis adds a short handwritten addendum addressing his high blood pressure and Hepatitis C: "I also suffer from high blood pressure. I have been diagnosed with Hep C since arriving @ McConnell which goes untreated as well." *Id.* at page 33. Notably, in the "action requested" section of the grievance, Davis does not mention wanting Hepatitis C treatment, writing instead: "I request to have my broken, decayed teeth removed and a denture plate be made." *Id.*

Given TDCJ's "one issue per grievance" policy and the fact that Davis's Step One grievance centered overwhelmingly on the issue of dental care and sought redress solely for that issue, TDCJ responded only to that issue and disregarded the handwritten addendum mentioning Hepatitis C:

> Offender Davis, you were seen by Dental on 1/17/19, 2/28/19, and 3/6/19. You have been offered the soft mechanical blended diet and refused. CMHC Policy E-36.4 has not been updated at this time. You are still required to be edentulous, have significant weight loss, be diagnosed medical nutritional deficiency, and then be referred to the Dental Prosthetics Committee for consideration before you can obtain dentures. You do not meet the criteria. At this time, the Dental and Medical departments do not know the entirety of the new criteria as the new policy is not in place yet. You may submit a sick call regarding the removal of any decayed teeth, however you do not meet the criteria for dentures at this time.

*Id.*

After receiving this response, Davis filed a Step Two grievance, again pertaining almost exclusively on his access to dental care and dental prosthetics:

> The Houston Chronical and the Prison Legal News both reported Senator John Whitmire and TDCJ Medical Director Dr. Lanette Linthicum announced a new dental policy that would be guaranteed to be implemented and adopted by TDCJ by December 2018 that covers dentures. I did see dental here at the McConnell Unit several times over this, the last time being 3/6/19 when I was told I could not even have the decayed teeth pulled. I have since been to my county jail (Aransas County), where I had an immediate oral surgery to remove all the decaying teeth. My gums are still hurting. This leaves me with no teeth in the top of my mouth to chew with. TDCJ has been aware of my condition for years and has denied me proper dental care. TDCJ offenders are forced to file years of paperwork to get proper medical/dental care that all other states give openly to their inmates. To deny dental/medical care to the prisoners of this state is a violation of the Eighth Amendment of the United States Constitution. There's a "Dental Prosthetics Committee" paid for by the state of Texas but an inmate cannot get dentures when all his teeth fall out for lack of dental care of said state. I have been refused treatment for Hep C. I have been refused dental care. I suffer from high blood pressure that is not treated with proper meds. This lack of care for Texas prisoners has to be checked and changed. This is my notice to file a lawsuit with the courts of Bee County.

*Id.* at pages 30-31. Hidden in this diatribe against TDCJ's dental policy is one line about Hepatitis C: "I have been refused treatment for Hep C." *Id.* at page 30. Understandably, then, TDCJ's Health Services Division chose Davis's dental policy concern as the one issue to which it would respond in evaluating his Step Two grievance:

> A review of the Step 2 medical grievance and documentation has been completed regarding your medical complaint you are requesting to have your broken teeth removed and to receive new dentures as written in the Houston Chronicle.

8

> An appellate review of the Step 2 medical grievance and clinical record indicates the response at Step 1 is appropriate. Upon further review of our electronic health records, clinic note from 02/28/2019 indicates you are not eligible for dentures at this time. Please be advised dental prosthetics are provided to offenders when their health is otherwise adversely affected. Meaning from 07/02/20~8 your weight was at 198 and your body mass index (BMI) was 28, currently your weight is 200 pounds with a BMI of 29. You have not lost any weight due to missing or broken teeth, in fact you have gained weight. The provider will determine if your nutritional status is compromised by offering special diets, such as a mechanical soft diet and nutritional supplements. You were offered a special mechanical diet in January, 2019, and chose not to accept it. If you change your mind and would like to try the diet, speak with your health care provider, then after implementing the special diet you will follow up with the provider for an evaluation to assess the effectiveness of that diet. If the provider decides your health is at risk, he will submit a letter to the Dental Utilization Review Committee for a determination.
>
> For more information on dental prosthodontic services, please see Correctional Managed Health Care (CMHC) policy E-36.4. This policy should answer any questions or concerns you may have. Documentation indicates that you did not attempt informal resolution of your medical concern with the medical supervisory staff. Refer to Policy A 12.1, Attach. A, HAS-34, "Getting Medical Treatment" for further information. No further action is warranted at this time through· the grievance process.

*Id.* at page 31.

If, following this response, Davis wished to continue complaining about his access to Hepatitis C treatment, he was free to file a separate set of grievances pertaining solely to that issue. But that is not what he did. Instead, he interpreted TDCJ's denial of his request for dental accommodations as a denial of his request for Hepatitis C treatment, when the responses to both his Step One and Step Two clearly demonstrate that TDCJ only addressed the former. Davis then filed this lawsuit without allowing TDCJ an opportunity to specifically redress the complaints asserted therein. That flies in the face of the purpose of the PLRA's exhaustion requirement; namely, to "allow prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Jones*, 549 U.S. at 204.

In *Evans*, assessing remarkably similar facts, the Eastern District held that an inmate who violates the "one issue per grievance" rule has not properly exhausted administrative remedies unless

9

TDCJ specifically responds to the issue giving rise to the lawsuit. 2016 WL 11200187, at *3-4. Where, as here, it is apparent from the face of the pleadings that TDCJ investigated and responded only to some other issue raised in the inmate's multi-issue grievances, the PLRA has not been satisfied and Rule 12(b) dismissal is warranted. *See id.*

> b. **Grievance No. 201909117's brief mention of Hepatitis C treatment is insufficient to provide TDCJ with notice of the events giving rise to this lawsuit.**

Setting aside the fact that Davis's Step One and Step Two grievances impermissibly raised multiple issues—and the fact that TDCJ's responses thereto addressed only the primary issue of dental prosthetics—the cursory mentions of Hepatitis C treatment Davis does include in that set of grievances are insufficiently specific to satisfy the PRLA.

When considering whether a prisoner has adequately exhausted the administrative grievance process, the court must determine whether the prisoner has given the prison authorities "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516 (5th Cir.2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). When presenting his grievance, therefore, the prisoner must provide an explanation of which of his rights were violated as well as how they were violated and, in most cases, who violated them. *Id.* at 517. "While it is not necessary for a prisoner to have presented a full-fledged legal theory of how his rights have been violated, he must present enough facts to inform the authorities about the problem and a chance to respond to it." *Ross v. Thaler*, No. V-08-083, 2010 WL 1064714, at *4 (S.D. Tex. Mar. 18, 2010) (citing *Johnson* at 518).

Applying this standard, courts will dismiss claims for failure to exhaust where, as here, the inmate's grievances merely alluded generally to the issue giving rise to the lawsuit. *See, e.g., id.* ("[Plaintiff]'s grievances, while timely, did not provide sufficient facts or arguments to allow TDCJ–CID to address his claim of denial of medical attention. It is not enough that [plaintiff] filed grievances which may have alluded to the incident in question but failed to raise the specific ground for relief.");

*Marsalis v. Cain*, No. 12-0799, 2014 WL 51215 (M.D. La. Jan. 7, 2014) (claims in grievances that were "only alluded to so minimally as to be insufficient to provide fair notice to prison officials of the plaintiff's specific complaints" were unexhausted); *Merryman v. Collier*, No. 1:20-CV-1, 2022 WL 807402, at *3 (E.D. Tex. Feb. 2, 2022), *rec. adopted*, 2022 WL 799072 (E.D. Tex. Mar. 15, 2022) ("Plaintiff's grievance is devoid of specific details concerning the alleged daily excessive heat exposure, any mention of discrimination, and the general inadequacy of the classification and housing practices existing at the prison facility. Therefore, Plaintiff did not properly exhaust the available administrative remedy regarding these claims prior to filing this action.").

Here, as mentioned above, the *only* statement in Davis's Step One grievance that relates to the issues in this lawsuit is one line in his handwritten addendum: "I have been diagnosed with Hep C since arriving @ McConnell which goes untreated as well." Compl. at page 33. Similarly, his Step Two slips in one sentence on the topic: "I have been refused treatment for Hep C." *Id.* at 31. Nowhere in the set of grievances does he specify when he was denied treatment or by whom. Nor does he identify the type of treatment he was seeking, or the policy which he now alleges caused the delay in his receiving that treatment. Indeed, his requested relief through the grievance does not mention Hepatis C treatment at all; rather, he requests only "to have my broken, decayed teeth removed and a denture plate be made." *Id.* at 33.

By this lawsuit, Davis seeks to hold liable Dr. Kwarteng and PA Echavarry for specific actions on specific dates, and the remaining Defendants for their specific roles in promulgating a specific policy. *See generally* FAC. Nothing in Grievance No. 2019090117 mentions these complaints. Simply stating that his Hepatitis C "goes untreated" (Compl. at page 33) is not enough to give prison officials "fair notice" of the specific facts and events that form the basis of this lawsuit. *See Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). Nor does it give prison officials "time and opportunity to address [the]

11

complaints internally." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Accordingly, Grievance No. 2019090117 is insufficient to satisfy the PLRA's exhaustion requirements.

## CONCLUSION

Defendants respectfully pray this Court grant this motion and dismiss Davis's lawsuit for failure to exhaust administrative remedies. If this motion is denied, Defendants reserve the right to reassert the exhaustion defense in a motion for summary judgment.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ *Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Texas State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF COMPLIANCE

I, Michael J. Calb, Assistant Attorney General of Texas, certify that this document is compliant with the Court Procedures of Hon. Julie K. Hampton, United States Magistrate Judge. This document contains **4574** words.

/s/ *Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General

## CERTIFICATE OF CONFERENCE

I, Michael J. Calb, Assistant Attorney General of Texas, certify that Plaintiff is unavailable for conference on this motion on account of his being incarcerated and proceeding *pro se*.

/s/ *Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, Michael J. Calb, Assistant Attorney General of Texas, certify that a correct copy of the foregoing has been served on Plaintiff by placing it in the United States Mail, postage prepaid, on September 9, 2022 addressed to:

**Johnny Lee Davis**     *CMRRR 7021 2720 0002 0452 5449*
TDCJ # 02114918
McConnell Unit
3001 S. Emily Drive
Beeville, Texas 78102