United States District Court
Southern District of Texas
**ENTERED**
February 15, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHNNY LEE DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00076 |
| | § | |
| ISAAC K. KWARTENG, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION TO DISMISS AND TO DENY
## <u>PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT</u>

Plaintiff Johnny Lee Davis, a Texas inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is a Motion to Dismiss filed by Defendants Dr. Isaac Kwarteng ("Dr. Kwarteng"), Physician Assistant Erick Echavarry ("PA Echavarry"), Dr. Lanette Linthicum ("Dr. Linthicum"), Tanya Lawson ("Lawson"),[1] Kirk Abbott ("Abbott") and Chris Ann Black-Edwards ("Black-Edwards")[2] (collectively, "Defendants"). (D.E. 16). Also pending is Plaintiff's Motion for Declaratory Judgment. (D.E. 18). For the reasons stated herein, it is respectfully recommended that the Court grant Defendants' motion on

---

[1] The Court retained Davis's individual-capacity claims against the chairperson of the "Facility Quality Management Team." (D.E.s 12 & 15). Defendants advise that no such entity exists. However, each prison unit has a "Quality Improvement/Quality Management Committee" which roughly serves the function Davis outlines in his complaint. At all times relevant to this action, Lawson was chair of that committee at the McConnell Unit.

[2] The Court retained Davis's individual-capacity claims against the chairperson for the "Correctional Managed Health Care Infection Control Committee." (D.E.s 12 & 15). Defendants advise the Court that at all times relevant to this action, Abbott and Black-Edwards were co-chairs of that committee.

the issue of lack of exhaustion and deny Plaintiff's motion for declaratory judgment as moot.

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.      BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In his original complaint, Plaintiff sued the following McConnell Unit medical officials in their individual and official capacities: (1) Dr. Kwarteng; and (2) PA Echavarry. (D.E. 1, pp. 1, 3). Plaintiff sought declaratory and monetary relief. (D.E. 1, p. 4). Plaintiff generally claimed that Dr. Kwarteng and PA Echavarry violated his Eighth Amendment rights by failing provide him adequate medical treatment in a timely manner for his Hepatitis C (Hep. C) infection.

Due to the insufficiency of Plaintiff's allegations set forth in his original complaint, the undersigned ordered Plaintiff to file a More Definite Statement. (D.E. 9). Rather than file a More Definite Statement, Plaintiff submitted his First Amended Complaint in which he named the following defendants: (1) Dr. Kwarteng; (2) PA Echavarry; (3) Dr. Linthicum; (4) the Facility Quality Management Team (FQMT) and its Chairperson, the

Director of Public Health; (5) the Correctional Managed Health Care Infection Control Committee (CMHCC) and its Chairperson; (6) John Doe; and (7) Jane Doe. (D.E. 10, pp. 3-6). Plaintiff reiterated that he seeks declaratory and monetary relief. (Id. at 14).

Plaintiff references a class action brought in this Court by inmates with the Hep. C infection, *Roppolo, et al. v. Linthicum, et al.*, 2:19-CV-262 (S.D. Tex. filed on Sept. 11, 2019) (*Roppolo* Class Action). (D.E. 10, p. 6). In *Roppolo*, a group of Texas inmates sought injunctive relief in the form of being treated with direct-acting antiviral (DAA) medication for their Hep. C infection. The parties entered into a Settlement Agreement setting forth a treatment schedule in which the sickest inmates would receive DAA treatment first depending upon the inmate's particular AST/Platelet Ration Index (APRI) score and Metavir score. (*Roppolo* Class Action, D.E. 132-2). These scores were found to be useful in determining the degree of fibrosis or cirrhosis in the liver. (Id., D.E. 132, p. 12).

On May 11, 2021, District Judge Nelva Gonzales Ramos overruled all objections to the proposed Settlement Agreement and directed the parties to submit an agreed final order and judgment. On July 2, 2021, District Judge Ramos entered a final order approving the class action Settlement Agreement. (*Id.*, D.E. 314). Notwithstanding approval of the Settlement Agreement by the Court, TDCJ inmates having Hep. C infections, such as Plaintiff, were not barred from filing a separate lawsuit seeking monetary relief related to the treatment received. (See *id.*, D.E. 138-1, p. 2).

On July 29, 2022, the undersigned issued a Memorandum and Recommendation ("M&R") recommending that the Court: (1) retain Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Kwarteng, PA Echavarry, Dr. Linthicum, the FQMT's Chairperson, and CMHCC's Chairperson in their individual capacities for monetary relief; (2) dismiss with prejudice Plaintiff's claims for money damages against the individual Defendants in their official capacity; (3) dismiss without prejudice Plaintiff's claims against John Doe and Jane Doe; and (4) dismiss with prejudice Plaintiff's claims against FQMT and the CMHCC.  On August 29, 2022, District Judge Nelva Gonzales Ramos adopted the M&R.  (D.E. 15)

On September 9, 2022, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.E. 16).  Plaintiff subsequently filed his response and objections to Defendants' motion.  (D.E. 17).  Plaintiff also subsequently filed a motion requesting a declaratory judgment.  (D.E. 18).

## III.   PLAINTIFF'S ALLEGATIONS

The following allegations relevant to Plaintiff's deliberate indifference claims were made in Plaintiff's first amended complaint (D.E. 10). In June 2018, Dr. Kwarteng diagnosed Plaintiff with chronic Hep. C. (D.E. 10, pp. 3, 6). Dr. Kwarteng informed Plaintiff at that time that he did not qualify for treatment because his APRI scores were not high enough under the policy in effect at that time. (*Id.*).

In June 2018, Dr. Kwarteng also prescribed Plaintiff certain injections in order to prevent Hepatitis A (Hep. A) and Hepatitis B (Hep. B), respectively, as well as to prevent

the diagnosed Hep. C condition from "killing the patient who contracts and has one or more of" Hep. A or B. (*Id*. at 37-8). Plaintiff states that this treatment was a band-aid to push the Hep. C issue down the road and was a deliberate act by Defendants to circumvent their budgetary resources. (*Id*. at 8).

In October 2019, PA Echavarry saw Plaintiff with regard to his chronic Hep. C condition. (Id. at 4, 8). PA Echavarry advised Plaintiff that his APRI score had risen to .353 but that his score was not high enough to qualify for treatment. (*Id*.). Plaintiff's Metavir score that day was F0-F1. (*Id*. at 9). PA Echavarry explained that Plaintiff's APRI score must reach .700 or higher under the policy in effect to qualify for treatment. (*Id*. at 4, 8). PA Echavarry further informed Plaintiff that the policy in the past set forth a .400 APRI score as qualifying for treatment but that it was raised to .700 because TDCJ "realized how many people needed the treatment." (*Id*.).

Plaintiff was a class action member in the *Roppolo* case. (*Id*.). In March 2021, Plaintiff received notice that a settlement had been reached in the *Roppolo* Class Action. (*Id*.). On March 24, 2021, Plaintiff was seen by Echavarry in order to obtain Plaintiff's APRI and Metavir scores. (*Id*.). Plaintiff's APRI score had risen to .635, while his Metavir score rose to F3. (*Id*.).

In September 2021, Plaintiff began to receive treatment for Hep. C condition in the form of a DAA called Epclusa. (*Id*. at 7). Plaintiff completed his DAA treatment in December 2021. (*Id*.). At the time of his treatment, Plaintiff was in an advanced stage of fibrosis and was showing "mild splenomegaly" which meant that his spleen may have to

be removed. (*Id*.). After his 12-week treatment with Epclusa, Plaintiff's lab results were "HCV-RNA = undetected indicating sustained viral response." (*Id*.).

Plaintiff sues Dr. Kwarteng for allowing his Hep. C condition to go unchecked without any referral for treatment, which caused Plaintiff to suffer damage to his liver over the course of three years. (*Id*. at 3). When Plaintiff's APRI score exceeded the levels set by policy, Dr. Kwarteng continued to deny referral treatment, stating that "the APRI scores do not matter [as] anyone can have a high APRI score and not need treatment." (*Id*. at 3). Because Dr. Kwarteng did not monitor Plaintiff's Hep. C condition pursuant to policy, Plaintiff's Hep. C condition expanded to advanced fibrosis. (*Id*.). Plaintiff likewise holds Echavarry responsible for not properly monitoring Plaintiff's Hep. C condition according to policy and for not referring him for DAA treatment until after Plaintiff was suffering with advanced fibrosis. (*Id*. at 4).

Plaintiff identifies Dr. Linthicum as the TDCJ's Health Services Director. (*Id*.). Despite knowing that DAA treatment was the standard of care for treating Hep. C patients, Plaintiff holds Dr. Linthicum responsible for the Hep. C policies in place that did not provide such treatment to Plaintiff. (*Id*.). According to Plaintiff, rather than train her subordinates to administer DAA drugs immediately upon diagnosis, Dr. Linthicum opted to implement a monitoring policy that prolonged Plaintiff's suffering by allowing his disease to advance to advanced fibrosis. (*Id*. at 5).

## IV.    LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Defendants bring their motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 554-55.  When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

V.     DISCUSSION

Defendants seek dismissal of Plaintiff's deliberate indifference claims for failure to exhaust his administrative remedies.  (D.E. 16, pp. 3-12).  The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints.  *Jones v. Bock*, 549 U.S. 199, 215 (2006).  However, a court can dismiss a complaint for failure to exhaust if "the complaint itself makes clear that the prisoner failed to exhaust."  *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007).

The TDCJ provides a two-step procedure for presenting administrative grievances.  *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (*per curiam*).  Step 1 requires the inmate

to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.* The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Id* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

TDCJ policy also requires that "only one issue per grievance be presented." *Randle v. Woods*, 299 F. Appx. 466, 467 (5th Cir. 2008) (*citing Woodford v. Ngo*, 548 U.S. 81 (2006)); *Richbourg v. Horton*, No. 08–10043, 2008 WL 5068680, at *1 (5th Cir., Dec. 2, 2008) ("Generally, pursuant to prison regulations, only one grievance can be filed every seven days and only one issue can be raised in each grievance."); *see also* TDCJ Offender Orientation Handbook, p. 74 (explaining rule that inmates may present only one issue per grievance). Where an inmate violates this rule and submits grievances complaining of multiple issues, courts will dismiss the action for failure to exhaust unless the TDCJ officials investigating the grievance specifically responded to the issue giving rise to the case. *See, e.g., Davis v. Evans*, 5:15-cv-138, 2016 WL 11200187, at *3-4 (E.D. Tex. Dec. 9, 2016), *rec. adopted*, 2017 WL 892117 (E.D. Tex. Mar. 7, 2017).

When considering whether a prisoner has adequately exhausted the administrative grievance process, the court must determine whether the prisoner has given the prison authorities "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516 (5th Cir.2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). When presenting his grievance, therefore, the prisoner must provide an explanation of which of his rights were violated as well as how they were violated and, in most cases, who violated them. *Id.* at 517. "While it is not necessary for a prisoner to have presented a full-fledged legal theory of how his rights have been violated, he must present enough facts to inform the authorities about the problem and a chance to respond to it." *Ross v. Thaler*, No. V-08-083, 2010 WL 1064714, at *4 (S.D. Tex. Mar. 18, 2010) (citing *Johnson* at 518).

Applying this standard, courts will dismiss claims for failure to exhaust where the inmate's grievances merely alluded generally to the issue giving rise to the lawsuit. *See*, e.g., *id.* ("[Plaintiff]'s grievances, while timely, did not provide sufficient facts or arguments to allow TDCJ–CID to address his claim of denial of medical attention. It is not enough that [plaintiff] filed grievances which may have alluded to the incident in question but failed to raise the specific ground for relief."); *Marsalis v. Cain*, No. 12-0799, 2014 WL 51215, at *5 (M.D. La. Jan. 7, 2014), *rec. adopted* 2014 WL 407457 (M.D. La. Jan. 31, 2014) (claims in grievances that were "only alluded to so minimally as to be insufficient to provide fair notice to prison officials of the plaintiff's specific complaints" were unexhausted); *Merryman v. Collier*, No. 1:20-CV-1, 2022 WL

807402, at *3 (E.D. Tex. Feb. 2, 2022), *rec. adopted*, 2022 WL 799072 (E.D. Tex. Mar. 15, 2022) ("Plaintiff's grievance is devoid of specific details concerning the alleged daily excessive heat exposure, any mention of discrimination, and the general inadequacy of the classification and housing practices existing at the prison facility. Therefore, Plaintiff did not properly exhaust the available administrative remedy regarding these claims prior to filing this action.").

Plaintiff attached his Step 1 and Step 2 grievances to his first amended complaint. (D.E. 10-1, pp. 11-14).  Because Plaintiff attached these grievances as exhibits to his complaint, "they are considered part of the complaint 'for all purposes.'"  *Hampton v. Brindley*, No. 3:17-CV-299, 2018 WL 3609034, at *4 n.4 (S.D. Tex. July 27, 2018) (citing Fed. R. Civ. P. 10(c)).  As such, the Court may consider these exhibits in connection with Defendants' Rule 12(b)(6) motion.  *Id.* (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004)).

In his Step 1 grievance, dated March 7, 2019, Plaintiff complains at length about access to dental care and the prison dental prosthetics policy.  (D.E. 10-1, pp. 13-14). Plaintiff included a short, handwritten sentence addressing high blood pressure and Hepatitis C.  (*Id.*).  In the "action requested" section, Plaintiff writes "I request to have my broken, decayed teeth removed and a denture plate be made."  (*Id.*)  In a Step 2 grievance dated June 21, 2019, Plaintiff complained almost exclusively about his access to dental care and dental prosthetics.  (*Id.* at 11-12).  In a short sentence in the middle of Plaintiff's

statements regarding his dental care issues, Plaintiff states "I have been refused treatment for Hep C."  (*Id.*).

Defendants contend in their Motion to Dismiss that Plaintiff's "failure to exhaust appears on the face of the pleadings and as such, dismissal under Rule 12(b)(6) is appropriate."  (D.E. 16, pp. 10, 12).   Defendants reference Plaintiff's Step 1 and 2 grievances attached to the first amended complaint, which reflects that Plaintiff submitted a multi-issue grievance and that TCDJ officials responded to the grievance that Plaintiff was focused on in the documents.  (*Id.*).  In his response to the Motion to Dismiss, Plaintiff confirms that he filed his Step 1 and Step 2 grievances but does not address the issue regarding submitting multi-issue grievances.  (D.E. 17).

The undersigned agrees with Defendants that dismissal is appropriate because Plaintiff's failure to exhaust appears on the face of his pleadings.  The Step 1 and Step 2 grievances attached to his first amended complaint raises multiple unrelated concerns in the same grievance.  Plaintiff has not properly exhausted administrative remedies unless TDCJ specifically responds to the issue giving rise to the lawsuit. *Evans*, 2016 WL 11200187, at *3-4.  Where, as here, it is apparent from the face of the pleadings that TDCJ investigated and responded only to some other issue raised in the inmate's multi-issue grievances, the PLRA has not been satisfied and Rule 12(b) dismissal is warranted. *See id*.

When accepting as true Plaintiff's facts set forth in his first amended complaint, and attached exhibits, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 16) for failure to exhaust be granted as to Plaintiff's Eighth Amendment

deliberate indifference claims against Defendants.  The claims should be dismissed with prejudice because any new grievance filed by Plaintiff would remain time-barred under the TDCJ's grievance procedure and the failure to exhaust cannot be cured.  *See Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that dismissal with prejudice warranted when administrative relief is time barred or otherwise precluded).

## VI.    RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT** Defendants' Motion to Dismiss (D.E. 16) and **DISMISS with prejudice** Plaintiff's Eighth Amendment deliberate indifference claims against all Defendants for lack of exhaustion.  It is further recommended that Plaintiff's Motion for Declaratory Judgment (D.E. 18) be **DENIED** as moot.

Respectfully submitted on February 15, 2023.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).